| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Civil Action No. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MOHAMMED ALI MOZAMMEL, A078-498-821,[1] | ) | **COMPLAINT TO REVOKE** |
| | ) | **NATURALIZATION** |
| a.k.a. MOHAMMAD ALI, A073-046-859, | ) | |
| | ) | |
| Defendant. | ) | |

## I.  PRELIMINARY STATEMENT OF THE CASE

The United States of America ("Plaintiff") brings this civil action against Defendant

Mohammed Ali Mozammel, a.k.a. Mohammad Ali ("Defendant") to revoke his naturalized U.S.

citizenship under 8 U.S.C. § 1451(a).  Plaintiff alleges that Defendant procured his naturalization

unlawfully and that he willfully misrepresented and concealed material facts in applying to

naturalize.

Before he naturalized as a U.S. citizen in 2005 under the identity Mohammed Ali

Mozammel, Defendant was previously ordered deported from the United States under the

identity Mohammad Ali.  In 1994, Defendant applied for an immigration benefit with the former

Immigration and Naturalization Service ("INS")[2] and identified himself as "Mohammad Ali."  In

---

[1]  Pursuant to the Privacy Act, 5 U.S.C. § 552a(b), Plaintiff will redact information throughout this document and its exhibits that includes social security numbers, dates of birth, places of birth, alien numbers, passport numbers, phone numbers, and tax information, which are precluded from disclosure.

[2]  On March 1, 2003, the INS ceased to exist as an independent agency within the Department of Justice, and most of its functions were transferred to the newly formed Department of Homeland Security.  *See* Homeland Security Act of 2002, Pub. L. No. 107-296, §§ 441, 451, 471, 116 Stat. 2135 (Nov. 25, 2002).  The INS was divided into several separate agencies, including United States Citizenship and Immigration Services ("USCIS"), Customs and Border Protection, and

1996, the INS found that Defendant was not credible on material points and his claim for immigration benefits was denied. INS also placed Defendant in deportation proceedings. On April 6, 1998, an immigration judge ordered Defendant deported from the United States to Bangladesh in absentia. There is no record that Defendant departed the United States pursuant to the deportation order.

On September 16, 2000, Defendant, now using the identity Mohammed Ali Mozammel ("Mozammel"), married Deborah Mattei, a U.S. citizen, in Pennsylvania. On March 15, 2001, Defendant, continuing to use the Mozammel identity, filed an application for adjustment of status with the INS based upon this marriage with Deborah Mattei. In this application, Defendant changed from the earlier 1994 application, *inter alia*, his name, date of birth, and date of entry into the United States. On August 31, 2001, the INS approved Defendant's adjustment of status application under the Mozammel identity. On September 1, 2005, Defendant naturalized under the Mozammel identity and immigration history. Defendant did not disclose his prior immigration history under the Mohammad Ali identity in any of his immigration applications under the Mohammed Ali Mozammel identity.

Defendant's actions and conduct statutorily barred him from becoming a U.S. citizen and render his naturalization unlawfully procured. Thus, with the attached affidavit showing good cause, the United States brings this civil action to revoke and set aside the order admitting Defendant to citizenship and to cancel his certificate of naturalization.

---

Immigration and Customs Enforcement. USCIS assumed naturalization authority from the INS. This Complaint will refer to INS where appropriate.

## II.    JURISDICTION AND VENUE

1.    This is an action under 8 U.S.C. § 1451(a) to revoke and set aside the order admitting Defendant to U.S. citizenship and to cancel Certificate of Naturalization No. 29391489, issued September 1, 2005.

2.    This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1345 for a cause of action under 8 U.S.C. § 1451(a).

3.    Venue is proper in this district pursuant to 8 U.S.C. § 1451(a) and 28 U.S.C. § 1391, because Defendant resides in Pennsburg, Pennsylvania, within the jurisdiction and venue of this Court.

## III.    PARTIES

4.    Plaintiff is the United States of America.

5.    Defendant is a naturalized U.S. citizen and purports to be a native of Bangladesh. Mohammed Ali Mozammel and Mohammad Ali are one and the same person.

## IV.    FACTUAL ALLEGATIONS

6.    The affidavit of Nasim Sargordan, Adjudication Officer, USCIS, an agency within the Department of Homeland Security, showing good cause for this action, as required by 8 U.S.C. § 1451(a), is attached as Exhibit "A."

**A.    Defendant's Immigration Proceedings Under the Identity Mohammad Ali.**

7.    On January 20, 1994, Defendant applied for an immigration benefit with the INS. *See* Alien File ("A File") attached hereto as Exhibit "B" at 42-46. The INS assigned him alien registration number A073-046-859. On his application, signed on December 28, 1993, under penalty of perjury, Defendant represented that:

a.    his name was Mohammad Ali;

b.    he was born on January 1, 1965 in Bangladesh;

c.    he last arrived in the United States on March 21, 1992 in Miami, Florida;

d.    he was married to Momtaz Begum;

e.    he had one child: Mazharul Huq, born on September 4, 1982; and

f.    he was a member of Jatio Party and was arrested and detained by the Bangladesh Nationalist Party (BNP). *Id.*

8.    In support of his application, Defendant submitted Form G-325A, Biographic Information, signed on December 28, 1993, under severe penalties for knowingly and willfully falsifying or concealing a material fact, on which he represented that:

a.    his name was Mohammad Ali;

b.    he was born on January 1, 1965, in Bangladesh;

c.    he was married to Sufia Khatun;

d.    his father's name was Moksed Ali; and

e.    his mother's name was Sufia Khatun. *See Id.* at 48.

9.    On November 23, 1993 and using the name Mohammad Ali, defendant provided his fingerprints to the INS.  HSI-FL 18-01532, dated August 29, 2019, Ex. 2.2, attached hereto as Exhibit "D".

10.    On July 18, 1996, Defendant appeared for an interview at the INS Office in Rosedale, New York, accompanied by an interpreter in the Bengali language.  Ex. B at 18-21.

11.    By notice dated July 18, 1996, INS informed Defendant that he was found not credible on material points of his claim and referred him to the immigration court. *Id*. On August 1, 1996, INS personally served him with a Form I-221, Order to Show Cause and Notice of Hearing (OSC), charging him as deportable from the United States pursuant to INA section

4

241(a)(1)(A), as an alien who was not in possession of a valid nonimmigrant visa or border crossing identification card. *Id.* at 12-16. The OSC ordered him to appear before the immigration judge on December 4, 1996. *Id*. at 14.

12.     On December 4, 1996, the case was adjourned until January 9, 1997.

13.     On January 9, 1997, Defendant appeared with his attorney, Salim Sheikh. *Id.* at 9. The immigration judge continued the case until April 6, 1998.

14.     On April 6, 1998, neither Defendant nor his attorney attended the hearing.  The Immigration Judge ordered Defendant deported *in absentia* from the United States to Bangladesh. *Id*. at 1.

15.     The government has no record that Defendant then departed the United States pursuant to the April 6, 1998 deportation order. Ex. A at ¶ 10.

**B.     Defendant's Applications Under the Identity Mohammed Ali Mozammel.**

16.     On September 16, 2000, Defendant, using a different identity, Mohammed Ali Mozammel ("Mozammel"), married Deborah A. Mattei, in Pennsylvania.

17.     On March 15, 2001, Defendant, using the Mozammel name, submitted to the INS Form I-485, Application to Register Permanent Resident or Adjust Status, based on his marriage to Deborah Mattei, a United States citizen. Ex. C at 147-48. INS assigned him A-Number A078-498-821. His United Sstates citizen spouse, Deborah Mattei-Mozammel, concurrently filed Form I-130, Petition for Alien Relative (I-130), on behalf of Defendant. Mattei-Mozammel represented that Defendant had never been under immigration proceedings in her I-130 Petition.

18.     On the Form I-485, signed under penalty of perjury, Defendant represented that:

    a.     his name was Mohammed Ali Mozammel;

    b.     he was born on January 1, 1960, in Bangladesh;

c.     he last arrived in the United States in 1990 in the status of a crewman;[3]

d.     he was married to Deborah A. Mattei-Mozammel, born on January 18, 1955, in the United States;

e.     he had one child: Mazharul Huque, born on January 5, 1983, in Bangledash;

f.     his father's name was Md. Mokasid Ali;

g.     his mother's name was Sufia;

h.     he claimed no present and past membership in or affiliation with any political organization, association, fund, foundation, party, club, society, or similar group in the United States or in any other place since his 16th birthday;

i.     he had never, in or outside of the United States, been arrested, cited, charged, indicted fined, or imprisoned for breaking or violating any law or ordinance, excluding traffic violations;

j.     he had never been deported from the United States or removed from the United States at government expense, excluded within the past year, nor was he now in exclusion or deportation proceedings; and

k.     he was not under a final order of civil penalty for violating section 274C of the INA for use of fraudulent documents, nor had he, by fraud or willful misrepresentation of a material fact, ever sought to procure, or procured, a

---

[3] Defendant provided conflicting information as to his last entry to the United States. He represented that he entered without inspection, but also indicated that he entered in the status of crewman. Whether Defendant entered as a crewman or without inspection has no bearing on his adjustment since Defendant adjusted under INA § 245(i), 8 U.S.C. § 1255(i), which allows adjustment for those in either category, provided that certain requirements are met.

visa, other documentation, entry into the U.S., or any other immigration benefit.

19. Defendant also submitted Form I-485 Supplement A in support of his application to adjust status, signed on February 14, 2001. In that supplement, submitted under penalty of perjury, he represented that:

a. his name was Mohammed Ali Mozammel;

b. he was born on January 1, 1960, in Bangladesh; and

c. he last entered the United States without inspection. (*Id* at 147-148).

20. On August 27, 2001, Defendant appeared for an interview in connection with his Form I-485.

21. On August 31, 2001, the Form I-130 and Form I-485 were approved, and Defendant was accorded lawful permanent resident status on a conditional basis pursuant to INA § 216, 8 U.S.C. § 1186a. *Id*. at 137.

22. On June 16, 2003, Defendant submitted Form I-751, Petition to Remove the Conditions on Residence, jointly with his spouse. *Id*. at 23-24. On this form, signed under penalty of perjury, Defendant represented that:

a. his name was Mohammed A. Mozammel;

b. he had not used other names;

c. his was born on January 1, 1960, in Bangladesh;

d. his A-Number was A078-498-821;

e. he was married to Deborah A. Mattei-Mozammel; and

f. he did not have any children.

7

23. On April 22, 2004, USCIS approved Defendant's Form I-751 without interview. *Id.* at 23.

24. On May 12, 2004, Defendant using the Mozammel name, submitted an I-551 Data Collection Card, on which he provided a fingerprint. HSI-FL 18-01532, dated August 29, 2019, Ex. 2.3, attached hereto as Exhibit "D" at 6-7.

25. On November 1, 2004, Defendant submitted Form N-400, Application for Naturalization. See Ex. C at 5-12. Defendant's application was based on having been a lawful permanent resident for a period of three years and married to and living with his United States citizen spouse. On his Form N-400, signed under penalty of perjury, Defendant represented that:

    a. his name was Mohammed Ali Mozammel;

    b. he had not used any other names;

    c. he was born on January 1, 1960, in Bangladesh;

    d. he had been married twice;

    e. he was married to Deborah Ann Mattei-Mozammel, whom he married on September 16, 2000;

    f. he was previously married to Begom Momotaz, whom he divorced on August 31, 2000;

    g. he had one child: Mazharal Haque, born on January 5, 1983, in Bangledash;

    h. he had never been a member of or associated with any organization, association, fund, foundation, party, club, society, or similar group in the United States or in any other place;

    i. he had never committed a crime or offense for which he was not arrested;

j.      he had never been arrested, cited, or detained by any law enforcement officer (including INS and military officers) for any reason;

k.      he had never been charged with committing any crime or offense;

l.      he had never been convicted of a crime or offense;

m.      he had never received a suspended sentence, been placed on probation, or been paroled;

n.      he had never been in jail or prison;

o.      he had never given any false or misleading information to any United States government official while applying for any immigration benefit to prevent deportation, exclusion, or removal;

p.      he had never lied to any United States government official to gain entry or admission into the United States;

q.      neither removal, exclusion, rescission, nor deportation proceedings were pending against him;

r.      he had never been removed, excluded, or deported from the United States;

s.      he had never been ordered to be removed, excluded, or deported from the United States;

t.      he had never applied for any kind of relief from removal, exclusion, or deportation; and

u.      he had taken one trip of 24 hours of more outside of the United States during the last five years to Bangladesh.

26.     On February 8, 2005, Defendant was fingerprinted in connection with his Form N-400. Ex. D at 4.

27. On July 18, 2005, Defendant was interviewed at the USCIS Field Office in Philadelphia, Pennsylvania, to determine his eligibility for naturalization. Ex. A at ¶ 21.

28. During the course of the naturalization interview, the interviewing officer, made a total of one correction/addition to Defendant's Form N-400, amending the end date of Mozammel's most recent employment to "present." *Id*. at ¶ 22.

29. At the conclusion of his naturalization interview, Defendant swore that the contents of his Form N-400, including the one correction/addition, were true and correct. *Id*

30. On the basis of his written application and the testimony he provided during his naturalization interview, Defendant's Form N-400 was approved on July 18, 2005. *Id*. at at ¶ 23.

31. On September 1, 2005, Defendant took the Oath of Allegiance and was admitted as a citizen of the United States. Ex. A at ¶ 24.

32. On September 1, 2005, USCIS issued Defendant, under the identity Mohammed Ali Mozammel, Certificate of Naturalization No. 29391489. *Id.* at 1.

## B. Fingerprint Analysis Confirms Mohammad Ali and Mohammed Ali Mozammel are the Same Individual.

33. On November 23, 1993, Defendant using the name Mohammad Ali provided his fingerprints to the INS. Ex. D at 5

34. On May 12, 2004, Defendant using the Mozammel name, submitted a I-551 Data Collection Card, on which he provided a fingerprint. *Id*. at 6-7.

35. On February 8, 2005, Defendant using the name Mohammed Mozammel was fingerprinted in connection with his Form N-400. *Id*. at 4.

36. Analysis and comparison of the fingerprint submissions described in Paragraphs 33 through 35 above confirm that the same individual provided all the fingerprint impressions. *Id*. at 1.

10

## V. GOVERNING LAW

### A. Congressionally Imposed Prerequisites to the Acquisition of Citizenship

37. No alien has a right to naturalization "unless all statutory requirements are complied with." *United States v. Ginsberg*, 243 U.S. 472, 474-75 (1917). Indeed, the Supreme Court has underscored that "[t]here must be strict compliance with all the congressionally imposed prerequisites to the acquisition of citizenship." *Fedorenko v. United States*, 449 U.S. 490, 506 (1981); *see also id.* ("An alien who seeks political rights as a member of this Nation can rightfully obtain them only upon the terms and conditions specified by Congress[.]") (quoting *Ginsberg*, 243 U.S. at 474)).

38. Congress has mandated that an applicant for naturalization demonstrate that he has been lawfully admitted to the United States for permanent residence. 8 U.S.C. § 1429.

39. Congress has defined the term "lawfully admitted for permanent residence" to mean "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws." *See* 8 U.S.C. § 1101(a)(20).

40. The term "lawfully" requires compliance with substantive legal requirements for admission, and not mere procedural regularity. *Koszelnik v. Sec'y of Dep't of Homeland Sec.*, 828 F.3d 175, 180-81 (3d Cir. 2016); *Saliba v. Att'y Gen. of United States*, 828 F.3d 182, 192 (3d Cir. 2016); *Gallimore v. Att'y Gen.*, 619 F.3d 216, 223 & n.6 (3d Cir. 2010). If the government adjusts an alien's status to that of a permanent resident when the alien was not eligible for adjustment, the alien did not "lawfully" obtain permanent resident status and is ineligible for naturalization. *Koszelnik*, 828 F.3d at 180-81.

41.     Under the law in effect at the time Defendant's adjustment application was approved, as today, Congress mandated that immigration courts had exclusive jurisdiction over applications for adjustment of status filed by applicants who were in deportation or removal proceedings, including applicants with final orders of deportation or removal.  8 C.F.R. § 245.2(a)(1) (2001).

42.     Under the law in effect at the time Defendant's adjustment application was approved, as today, Congress required that an applicant for adjustment of status be eligible to receive an immigrant visa and that an immigrant visa be immediately available to him at the time the application to adjust status was filed.  INA § 245(a), 8 U.S.C. § 1255(a).

43.     Under the law in effect at the time Defendant's adjustment application was approved, as today, an alien who sought an immigrant visa on the basis of a marriage entered into during deportation proceedings was ineligible for adjustment of status, unless the alien established by clear and convincing evidence that the marriage met certain good faith requirements. INA § 245(e), 8 U.S.C. § 1255(e).  With regard to the underlying petition, the petition itself may not be approved until the alien has resided outside the United States for two years after the date of marriage, INA § 204(g), 8 U.S.C. § 1154(g), unless the alien meets the good faith exception in INA § 245(e), 8 U.S.C. § 1255(e).

44.     Under the law in effect at the time Defendant's adjustment application was approved, as today, Congress required that applicants for adjustment of status be "admissible." INA § 245(a)(2), 8 U.S.C. § 1255(a)(2).

45.     An individual who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into

12

the United States or other benefit provided for in the INA is inadmissible. INA § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i).

46. Congress has mandated that an individual may not naturalize unless that person "during all periods referred to in this subsection has been and still is a person of good moral character . . .." 8 U.S.C. § 1427(a)(3). The required statutory period for good moral character begins five years before the date the applicant files the application for naturalization, and it continues until the applicant takes the oath of allegiance and becomes a U.S. citizen. *Id*. For those applying for naturalization under INA § 319, 8 U.S.C. § 1430, based on marriage to a United States citizen spouse, the statutory period begins three years before the date of application, continuing until the applicant takes the oath of allegiance and becomes a U.S. citizen. INA § 319, 8 U.S.C. § 1430.

47. Congress has explicitly precluded individuals within certain enumerated classes from being able to establish the good moral character necessary to naturalize. 8 U.S.C. § 1101(f)(6). In addition to the enumerated classes of persons precluded from establishing the good moral character necessary to naturalize, Congress also created a "catch-all" provision, which states, "The fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character." 8 U.S.C. § 1101(f). Such claims are evaluated on a case-by-case basis taking into account "the standards of the average citizen in the community of residence." 8 C.F.R. § 316.10(a)(2).

48. An applicant who, during the statutory period, commits an unlawful act adversely reflecting upon his or her moral character cannot meet the good moral character requirement, unless he or she proves extenuating circumstances exist. 8 C.F.R. § 316.10(b)(3)(iii).

13

### B. The Denaturalization Statute

49. Recognizing that there are situations where an individual has naturalized despite failing to comply with all congressionally imposed prerequisites to the acquisition of citizenship or by concealing or misrepresenting facts that are material to the decision on whether to grant his or her naturalization application, Congress enacted 8 U.S.C. § 1451.

50. Under 8 U.S.C. § 1451(a), this Court must revoke a U.S. citizen's naturalization and cancel his Certificate of Naturalization if naturalization was either:

    (a)    illegally procured, or

    (b)    procured by concealment of a material fact or by willful misrepresentation.

51. Failure to comply with any of the congressionally imposed prerequisites to the acquisition of citizenship renders the citizenship "illegally procured." *Fedorenko*, 449 U.S. at 506.

52. Naturalization was procured by concealment of a material fact or by willful misrepresentation, where: (i) the naturalized citizen misrepresented or concealed some fact during the naturalization process; (ii) the misrepresentation or concealment was willful; (iii) the fact was material; and (iv) the naturalized citizen procured citizenship as a result of the misrepresentation or concealment. *Kungys v. United States*, 485 U.S. 759, 767 (1988).

53. Where the government establishes that a defendant's citizenship was procured illegally or by concealment of a material fact or by willful misrepresentation, "district courts lack equitable discretion to refrain from entering a judgment of denaturalization." *Fedorenko*, 449 U.S. at 517.

## VI.  CAUSES OF ACTION

## <u>COUNT ONE</u>

### ILLEGAL PROCUREMENT OF NATURALIZATION
### NOT LAWFULLY ADMITTED FOR PERMANENT RESIDENCE
### (Final Order of Deportation at Adjustment)

54.  The United States realleges and incorporates by reference the allegations set forth in Sections I through V of this complaint.

55.  To qualify for naturalization, an applicant must have been "lawfully admitted" to the United States for permanent residence.  *See* 8 U.S.C. §§ 1427(a)(1), 1429. The term "lawfully" denotes compliance with substantive legal requirements, not mere procedural regularity. *Koszelnik*, 828 F.3d at 180-81.

56.  Defendant was subject to an order of deportation at the time that he filed his adjustment application.  Specifically, on April 6, 1998, an immigration judge ordered him, under the name Mohammad Ali, to be deported to Bangladesh *in absentia*. Therefore, on March 15, 2001, when Defendant filed his adjustment application under the new Mozammel name, he was already the subject of an order of deportation.

57.  Because Defendant used a different name in his adjustment application (Mozammel) than the name Defendant used in his immigration court proceedings (Mohammad Ali), and, thus, different than the name the immigration court used in his order of deportation, the INS was not aware of the Defendant's deportation proceedings or the outstanding order of deportation when it approved his adjustment application on August 31, 2001.

58.  Defendant was not lawfully admitted to the US for permanent residence at the time the INS because approved his application for adjustment because the immigration court maintained jurisdiction over him Mozammel due to the deportation order.

15

59.     Because Defendant was never lawfully admitted for permanent residence in accordance with the substantive requirements for that status, he was and remains ineligible for naturalization under 8 U.S.C. §§ 1427(a)(1) and 1429. *See* 8 U.S.C. § 1101(a)(20); *Koszelnik v. Sec'y of Dep't of Homeland Sec.*, 828 F.3d 175, 180-81 (3d Cir. 2016).

60.     Because he was ineligible to naturalize, Defendant illegally procured his naturalization, and this Court must revoke his citizenship under 8 U.S.C. § 1451(a).

**COUNT TWO**

**ILLEGAL PROCUREMENT OF NATURALIZATION**
**NOT LAWFULLY ADMITTED FOR PERMANENT RESIDENCE**
**(Not Eligible to Receive an Immigrant Visa)**

61.     The United States realleges and incorporates by reference the allegations set forth in Sections I through V of this complaint.

62.     To qualify for naturalization, an applicant must have been "lawfully admitted" to the United States for permanent residence. *See* 8 U.S.C. §§ 1427(a)(1), 1429. As noted above, the term "lawfully" denotes compliance with substantive legal requirements, not mere procedural regularity. *Koszelnik*, 828 F.3d at 180-81.

63.     Under the law in effect at the time Defendant's adjustment application was approved, as today, Congress required that an applicant for adjustment of status be eligible to receive an immigrant visa and that an immigrant visa be immediately available to him at the time the application to adjust status was filed. INA § 245(a), 8 U.S.C. § 1255(a).

64.     Under the law in effect at the time Defendant's adjustment application was approved, as today, an alien who sought an immigrant visa based upon a marriage entered into during deportation proceedings was ineligible for adjustment of status, unless the alien established by clear and convincing evidence that the marriage met certain good faith requirements. INA § 245(e), 8 U.S.C. § 1255(e). With regard to the underlying petition, the

16

petition itself may not be approved until the alien has resided outside the United States for two years after the date of marriage, INA § 204(g), 8 U.S.C. § 1154(g), unless the alien meets the good faith exception in INA § 245(e), 8 U.S.C. § 1255(e).

65. Defendant was in deportation proceedings under the name Mohammad Ali when he married his U.S. citizen spouse, Deborah Mattei-Mozammel, on September 16, 2000. He did not reside outside the United States during the two-year period beginning September 16, 2000 and ending September 16, 2002. Because Deborah Mattei-Mozammel represented on the Form I-130 that Defendant had never been under immigration proceedings, the INS was unaware that the I-130 visa petition was subject to the restrictions of INA § 204(g). As a result, the INS approved the petition on August 31, 2001, without the Defendant having physically resided outside the United States from September 16, 2000 and ending September 16, 2002, and without the petition meeting the good faith requirements under section 245(e)(3) of the INA. 8 U.S.C. §§ 1154(g) and 1255(e)(3).

66. Accordingly, Defendant was not eligible for approval of the I-130 visa petition and therefore was not eligible to receive an immigrant visa as required by INA § 245(a)(2), 8 U.S.C. § 1255(a)(2), to adjust his status. Additionally, INA § 245(e), 8 U.S.C. § 1255(e), made him ineligible for adjustment of status since the INS was not aware of the deportation proceedings, and thus did not require Defendant to meet the good faith requirements specified under its provisions.

67. Because Defendant was not eligible to receive an immigrant visa and not eligible for adjustment of status when the INS approved his adjustment application on August 31, 2001, Defendant was not lawfully admitted for permanent residence.

68. Because Defendant was never lawfully admitted for permanent residence in accordance with the substantive requirements for that status, he was and remains ineligible for naturalization under 8 U.S.C. §§ 1427(a)(1) and 1429. *See* 8 U.S.C. § 1101(a)(20); *Koszelnik v. Sec'y of Dep't of Homeland Sec.*, 828 F.3d 175, 180-81 (3d Cir. 2016).

69. Because he was ineligible to naturalize, Defendant illegally procured his naturalization, and this Court must revoke his citizenship under 8 U.S.C. § 1451(a).

### COUNT THREE

**ILLEGAL PROCUREMENT OF NATURALIZATION
NOT LAWFULLY ADMITTED FOR PERMANENT RESIDENCE
(Adjustment Procured by Fraud or Willful Misrepresentation)**

70. The United States realleges and incorporates by reference the allegations set forth in Sections I through V of this complaint.

71. To qualify for naturalization, an applicant must have been "lawfully admitted" to the United States for permanent residence. *See* 8 U.S.C. §§ 1427(a)(1), 1429. As noted above, the term "lawfully" denotes compliance with substantive legal requirements, not mere procedural regularity. *Koszelnik*, 828 F.3d at 180-81.

72. Under the law in effect at the time Defendant's adjustment application was approved, as today, Congress required that applicants for adjustment of status be "admissible." INA § 245(a)(2), 8 U.S.C. § 1255(a)(2).

73. Under the law in effect at the time that Defendant's adjustment application was approved, as today, an individual who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided for in the INA is inadmissible. INA § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i).

18

74. Defendant was never lawfully admitted to the United States as a permanent resident and cannot satisfy the requirements of 8 U.S.C. §§ 1427(a)(1) and 1429, because he was inadmissible at the time of his adjustment to permanent resident status.

75. Defendant sought to procure admission into the United States and other benefits provided for in the INA by fraud or willfully misrepresenting a material fact. Specifically, at the time Defendant adjusted his status to permanent resident using the name Mozammel, he had previously sought to procure and had been denied an immigration benefit using the name Mohammad Ali. Indeed, at the time that Defendant adjusted to permanent resident status, he was the subject of an outstanding order of deportation under the name Mohammad Ali.

76. Because Defendant made sworn statements in immigration benefit applications that cannot be simultaneously true, he was inadmissible.

77. Defendant's false statements regarding his name, date of birth, date of entry into the United States, and his immigration history were material to determining his eligibility for the immigration benefits for which he applied. Defendant's false statements had the natural tendency to influence a decision by the immigration officer(s) to approve his application(s). Defendant thus sought to procure an immigration benefit by fraud or willfully misrepresenting a material fact.

78. Because Defendant was inadmissible at the time he adjusted to permanent resident status, he was never lawfully admitted for permanent residence in accordance with the substantive legal requirements to obtain that status.

79. Because Defendant was never lawfully admitted for permanent residence, he was and remains ineligible for naturalization under 8 U.S.C. §§ 1427(a)(1) and 1429. *Koszelnik v. Sec'y of Dep't of Homeland Sec.*, 828 F.3d 175, 180-81 (3d Cir. 2016).

80. Because he was ineligible to naturalize, Defendant illegally procured his citizenship, and this Court must revoke his citizenship as provided for in 8 U.S.C. § 1451(a).

**COUNT FOUR**

**ILLEGAL PROCUREMENT OF NATURALIZATION
LACK OF GOOD MORAL CHARACTER
(Unlawful Acts Without Extenuating Circumstances)**

81. The United States realleges and incorporates by reference the allegations set forth in Sections I through V of this Complaint.

82. As outlined above, to be eligible for naturalization, Congress has mandated that an applicant for naturalization under INA § 319, 8 U.S.C. § 1430, based on marriage to a United States citizen spouse, must show that he or she has been a person of good moral character for the three-year period before filing his or her naturalization application until the time the applicant becomes a naturalized U.S. citizen. 8 U.S.C. §§ 1430(a), 1427(a)(3); 8 C.F.R. § 316.10(a)(1).

83. Defendant filed his naturalization application on November 1, 2004, and he naturalized on September 1, 2005. Thus, to be eligible for naturalization, Defendant was required to establish that he was a person of good moral character during his "statutory period" from November 1, 2001, until September 1, 2005.

84. Defendant completed and filed his naturalization application during his "statutory period."

85. Defendant violated 18 U.S.C. § 1001(a)(1)-(3) by knowingly and willfully concealing in his naturalization application—a matter within the jurisdiction of the executive branch of the Government of the United States—that he had previously used a different identity and that he been ordered deported under that identity.

86. Specifically, Defendant violated 18 U.S.C. § 1001(a)(1)-(3) when he completed and filed his naturalization application by answering "no" to Question 23 in Part 10, which asked: "Have you **EVER** given false or misleading information to any U.S. Government official while applying for any immigration benefit or to prevent deportation, exclusion, or removal?" (emphasis in original). Ex. C at 12.

87. Specifically, Defendant violated 18 U.S.C. § 1001(a)(1)-(3) when he completed and filed his naturalization application by answering "no" to Question 24 in Part 10, which asked: "Have you **EVER** lied to any U.S. Government official to gain entry or admission into the United States?" (emphasis in original). *Id*.

88. Specifically, Defendant violated 18 U.S.C. § 1001(a)(1)-(3) when he completed and filed his naturalization application by answering "no" to Question 27 in Part 10, which asked: "Have you **EVER** been ordered to be removed, excluded, or deported from the United States?" (emphasis in original). *Id.* at 13.

89. Specifically, Defendant violated 18 U.S.C. § 1001(a)(1)-(3) when he completed and filed his naturalization application by answering "no" to Question 28 in Part 10, which asked: "Have you **EVER** applied for any kind of relief from removal, exclusion, or deportation?" (emphasis in original). *Id*.

90. No extenuating circumstances exist that would palliate Defendant violation of 18 U.S.C. § 1001(a)(1)-(3).

91. Because Defendant committed unlawful acts during the statutory period during which he was required to maintain good moral character, he was and remains ineligible for naturalization under 8 U.S.C. §§ 1430(a), 1427(a)(1) and 1429.

92. Because he was ineligible to naturalize, Defendant illegally procured his citizenship, and this Court must revoke his citizenship as provided for in 8 U.S.C. § 1451(a).

**COUNT FIVE**

**PROCUREMENT OF NATURALIZATION BY CONCEALMENT OF A MATERIAL FACT OR WILLFUL MISREPRESENTATION**

93. The United States realleges and incorporates by reference the allegations set forth in Sections I through V of this Complaint.

94. Under 8 U.S.C. § 1451(a), this Court must revoke Defendant's citizenship and cancel his Certificate of Naturalization because he procured his naturalization by concealment of a material fact or by willful misrepresentation.

95. As set forth herein, throughout the naturalization process, Defendant willfully misrepresented and concealed, among other things: (i) his use of another identity, including a different date of birth; (ii) his prior order of deportation; (iii) his prior application for an immigration benefit; (iv) that he had given false or misleading information to a U.S. Government official while applying for any immigration benefit or to prevent deportation, exclusion, or removal; (v) that removal, exclusion, rescission, or deportation proceedings were pending against him; (vi) that he had lied to a U.S. Government official to gain entry or admission into the United States; (vii) that he had been ordered to be removed, excluded, or deported from the United States; (viii) and that he had previously applied for relief from removal, exclusion, or deportation. Defendant knew each of these statements to be false.

96. Defendant made such misrepresentations voluntarily and deliberately, despite knowing that such representations were false and misleading. Accordingly, Defendant made these misrepresentations willfully.

97. Defendant's misrepresentations were material to his naturalization because the disclosure of his multiple identities, multiple claimed dates of birth, prior application for an immigration benefit, prior order of deportation, and prior representations to U.S. Government officials while applying for an immigration benefit would have had a natural tendency to influence USCIS's decision whether to approve Defendant's application for naturalization. Indeed, had USCIS been aware of this information, it would have denied his naturalization application.

98. Defendant thus procured his naturalization by willful misrepresentation and concealment of material facts, and this Court must revoke his citizenship pursuant to 8 U.S.C. § 1451(a).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, the United States of America, respectfully requests:

(1) A declaration that Defendant illegally procured his citizenship;

(2) A declaration that Defendant procured his citizenship by concealment of material fact and by willful misrepresentation;

(3) Judgment revoking and setting aside the order admitting Defendant to citizenship and canceling Certificate of Naturalization No. 29391489, effective as of the original date of the certificate, September 1, 2005;

(4) Judgment forever restraining and enjoining Defendant from claiming any rights, privileges, benefits, or advantages under any document which evidences United States citizenship obtained as a result of his September 1, 2005, naturalization;

(5) Judgment requiring the Defendant, within ten days of the entry of judgment against him, to surrender and deliver his Certificate of Naturalization No. 29391489 and any

23

copies thereof in his possession or control (and to make good faith efforts to recover and then surrender any copies thereof that he knows are in the possession or control of others), to the Attorney General, or her designated representative, including undersigned counsel;

(6)     Judgment requiring the Defendant, within ten days of the entry of judgment, to surrender and deliver any other indicia of U.S. citizenship (including, but not limited to, United States passports and passport cards, Enhanced Drivers License, and other relevant documents), whether current or expired, and any copies thereof in his possession or control—and to make good faith efforts to recover and then surrender any copies thereof that he knows are in the possession or control of others—to the Attorney General, or her representative, including undersigned counsel; and

(7)     Judgment granting the United States any other relief that may be lawful and proper in this case.

Dated: June 12, 2026                           Respectfully submitted,

DAVID METCALF
United States Attorney

*s/ Gregory B. David*
GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

*s/ Colin Cherico*
COLIN M. CHERICO
Assistant United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106-4476
(215) 861-8788
Colin.Cherico@usdoj.gov

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

United States of America

**(b)** County of Residence of First Listed Plaintiff    Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Colin M. Cherico, AUSA/US Attorney's Office EDPA, 615 Chestnut Street, Suite 1250, Philadelphia, PA 19106/ (215) 861-8788 ➕

## DEFENDANTS

Mohammed Ali Mozammel, a/k/a Mohammed Ali

County of Residence of First Listed Defendant    Berks
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [x] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability / [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine / [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle / **PERSONAL PROPERTY** [ ] 370 Other Fraud | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability / [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury / [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice / [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights / **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 220 Foreclosure | [ ] 441 Voting / [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment / [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations / [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment / [ ] 535 Death Penalty | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other / **Other:** [ ] 540 Mandamus & Other | **IMMIGRATION** | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education / [ ] 550 Civil Rights | [ ] 462 Naturalization Application | | |
| | [ ] 555 Prison Condition | [x] 465 Other Immigration Actions | | |
| | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
8 U.S.C. § 1451(a)

Brief description of cause:
Revocation of Naturalization

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   [ ] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____ DOCKET NUMBER _____

DATE    June 12, 2026

SIGNATURE OF ATTORNEY OF RECORD
/s/ Colin M. Cherico

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction:___Philadelphia, PA_____

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?     Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?     Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?     Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?     Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation.     Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

**A.** *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Wage and Hour Class Action/Collective Action
☐ 6. Patent
☐ 7. Copyright/Trademark
☐ 8. Employment
☐ 9. Labor-Management Relations
☐ 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief **\*see certification below\***
☒ 16. All Other Federal Question Cases. *(Please specify)*:___8 USC 1451(a)_____

**B.** *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify)*:_____
☐ 7. Products Liability
☐ 8. All Other Diversity Cases: *(Please specify)*_____
   _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.