# Exhibit A

UNITED STATES OF AMERICA     )
                                         )
In the Matter of the Revocation     )      AFFIDAVIT OF GOOD CAUSE
of the Naturalization of     )
                                         )
Mohammed Ali Mozammel,     )
A078-498-821     )
a.k.a Mohammad Ali,     )
A073-046-859     )

I, Nasim Sargordan, declare under penalty of perjury as follows:

I am an Officer with U.S. Citizenship and Immigration Services (USCIS), Department of Homeland Security (DHS).[1] In this capacity, I have access to the official records of DHS, including the immigration files of Mohammed Ali Mozammel, A078-498-821, a.k.a. Mohammad Ali, A073-046-859.

I have examined records relating to Mozammel, including but not limited to, his immigration files. Based upon my review of records relating to Mozammel, I state, on information and belief that the information set forth in this Affidavit of Good Cause is true and correct.

Based on the facts and law contained herein, good cause exists to institute proceedings pursuant to section 340(a) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1451(a),[2] to revoke the citizenship of Mozammel and to cancel his Certificate of Naturalization.

The last known place of residence for Mozammel is ███████████████████████,
████████████.

---

[1] Pursuant to the Department of Homeland Security Reorganization Plan, Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002), 6 U.S.C. §§ 101-557, as of March 1, 2003, the Immigration and Naturalization Service (INS) was abolished and its functions were transferred to USCIS within the DHS. This Affidavit will refer to INS or USCIS as appropriate.

[2] While some provisions of the Immigration and Nationality Act, as contained in the United States Code, have been renumbered throughout the years, not all provisions have undergone such renumbering. Where necessary, this Affidavit of Good Cause lists the applicable year for a United States Code reference. If no year is included within the citation, it means that the United States Code citation is the same today as it was during the time in question.

Affidavit of Good Cause, Mozammel, A078-498-821                                    Page 2 of 12

## BACKGROUND

DHS records, including fingerprint comparison, establish that the person who naturalized as Mozammel is the same person who was previously ordered deported under the name Mohammad Ali.

### Immigration History as Mohammad Ali
### D.O.B. ███████████    A073-046-859

1. On January 20, 1994, the individual in question, using the name Mohammad Ali, filed ███████████████████████████████████, with the Immigration and Naturalization Service (INS). Under this identity, INS issued his Alien Registration Number (A-Number) A073-046-859.

2. On his ██████████, signed on December 28, 1993 under penalty of perjury, he represented that:

   - His name was Mohammad Ali.

   - He had not used other names.

   - He was born on January 1, 1965, in Bangladesh.

   - He did not have an A-Number.

   - He last arrived in the United States on March 21, 1992, in Miami, Florida.

   - He was married to Momtaz Begum.

   - He had one child: Mazharul Huq, born on September 4, 1982.

   - ████████████████████████████████████████.

   - He had been arrested and detained by the Bangladesh Nationalist Party (BNP).

   - He was a member of Jatio Party.

3. ████████████████████, he filed a Form G-325A, Biographic Information (Form G-325A), signed on December 28, 1993, under severe penalties for knowingly and willfully falsifying or concealing a material fact. In his Form G-325A, he represented that:

   - His name was Mohammad Ali.

   - He had not used any other names.

   - He was born on January 1, 1965, in Bangladesh.

   - He was married to Sufia Khatun.

   - His father's name was Moksed Ali.

- His mother's name was Sufia Khatun.

4. On July 18, 1996, he appeared ████████████████████████████ Rosedale, New York, accompanied by an interpreter in the Bengali language.

5. By notice dated July 18, 1996, INS informed him that it ████████████████ ████████████████████████████████████████.

6. On August 1, 1996, INS personally served him with a Form I-221, Order to Show Cause and Notice of Hearing (OSC), charging him as deportable from the United States pursuant to INA section 241(a)(1)(A), as an alien who was not in possession of a valid nonimmigrant visa or border crossing identification card. The OSC ordered him to appear before the immigration judge on December 4, 1996.

7. On December 4, 1996, the case was adjourned until January 9, 1997.

8. On January 9, 1997, Mozammel appeared with his attorney, Salim Sheikh. The case was continued until April 6, 1998.

9. On April 6, 1998, he and his attorney failed to appear for his scheduled hearing and the immigration judge ordered him deported *in absentia* to Bangledash.

10. USCIS has no record that he departed the United States pursuant to the order of deportation issued on April 6, 1998.

### Immigration History as Mohammed Ali Mozammel
### D.O.B. ██████████, A078-498-821

11. On September 16, 2000, the same individual in question, using the name Mohammed Ali Mozammel, married Deborah A. Mattei, in Pennsylvania.

12. On March 15, 2001, the individual in question, using the name Mohammed Ali Mozammel, filed Form I-485, Application to Register Permanent Residence or Adjust Status (I-485), with INS based on his marriage to Deborah A. Mattei-Mozammel, a United States citizen. INS assigned him A-Number A078-498-821. Mattei-Mozammel, concurrently filed Form I-130, Petition for Alien Relative (I-130), on behalf of Mozammel. In the Form I-130, Mattei-Mozammel represented that Mozammel had never been under immigration proceedings.

13. On his Form I-485, signed under penalty of perjury, Mozammel represented that:

- His name was Mohammed Ali Mozammel.

- ████████████████████████████.

Affidavit of Good Cause, Mozammel, A078-498-821                                    Page 4 of 12

- He last arrived in the United States in 1990, under the status of crewman[3].
- He was married to Deborah A. Mattei-Mozammel, born on ███████████, in the United States.
- He had one child: Mazharul Huque, born on ███████████, in Bangledash.
- His father's name was Md. Mokasid Ali.
- His mother's name was Sufia.
- He claimed no present and past membership in or affiliation with any political organization, association, fund, foundation, party, club, society, or similar group in the United States or in any other place since his 16th birthday.
- He had never, in or outside of the United States, been arrested, cited, charged, indicted fined, or imprisoned for breaking or violating any law or ordinance, excluding traffic violations.
- He had never been deported from the U.S. or removed from the U.S. at government expense, excluded within the past year, nor was he now in exclusion or deportation proceedings.
- He was not under a final order of civil penalty for violating section 274C of the INA for use of fraudulent documents, nor had he, by fraud or willful misrepresentation of a material fact, ever sought to procure, or procured, a visa, other documentation, entry into the U.S., or any other immigration benefit.

14. In support of his Form I-485, he filed a Form G-325A, signed on February 14, 2001, under severe penalties for knowingly and willfully falsifying or concealing a material fact. In his Form G-325A, he represented that:

- His name was Mohammed Ali Mozammel.
- He had not used any other names.
- He was born on January 1, 1960, in Bangladesh.
- His father's name was Md. Mokasid Ali Molla.
- His mother's name was Sufia Khtun.

---

[3] Mozammel provided conflicting information with regard to his last entry to the United States. He represented that he entered without inspection, but also indicated that he entered in the status of crewman. Whether Mozammel entered as a crewman or without inspection has no bearing on his adjustment since Mozammel adjusted under INA § 245(i), which allows adjustment for those in either category, provided that certain requirements are met.

Affidavit of Good Cause, Mozammel, A078-498-821                Page 5 of 12

- He was married to Deborah Mattei, whom he married on September 16, 2000, in Pennsylvania.
- He was previously married to Begom Momotaz, whom he divorced on August 31, 2000.

15. He also filed a Form I-485 Supplement A, Adjustment of Status under Section 245(i), signed on February 14, 2001 under penalty of perjury, in which he represented that:

- His name was Mohammed Ali Mozammel.
- He was born on ████████, in Bangladesh.
- He last entered the United States without inspection.

16. On August 27, 2001, Mozammel appeared for an interview in connection with his Form I-485.

17. On August 31, 2001, INS approved Mattei-Mozammel's Form I-130 and Mozammel's Form I-485. On that date, Mozammel was accorded lawful permanent resident status, on a conditional basis pursuant to INA § 216, 8 U.S.C. § 1186a.

18. On June 16, 2003, Mozammel filed with INS a Form I-751, Petition to Remove the Conditions on Residence, jointly with his spouse, Deborah A. Mattei-Mozammel. On Form I-751, signed under penalty of perjury, Mozammel represented that:

- His name was Mohammed A. Mozammel.
- He had not used any other names.
- He was born on ████████, in Bangladesh.
- His A-Number was A078-498-821.
- He was married to Deborah A. Mattei-Mozammel.
- He did not have any children.

19. On April 22, 2004, the Form I-751 was approved, without an interview.

20. On November 1, 2004, Mozammel filed with USCIS a Form N-400, Application for Naturalization (Form N-400), based upon having been a lawful permanent resident for at least three years and having been married to and living with the same U.S. citizen for the last three years and said spouse having been a U.S. citizen for at least three years at the time of filing the Form N-400. In his Form N-400, signed under penalty of perjury, Mozammel represented that:

- His name was Mohammed Ali Mozammel.

- He had not used any other names.
- He was born on ▮▮▮▮▮▮▮▮ in Bangladesh.
- He had been married twice.
- He was married to Deborah Ann Mattei-Mozammel, whom he married on September 16, 2000.
- He was previously married to Begom Momotaz, whom he divorced on August 31, 2000.
- He had one child: Mazharul Huque, born on January 5, 1983, in Bangledash.
- He had never been a member of or associated with any organization, association, fund, foundation, party, club, society, or similar group in the United States or in any other place.
- He had never committed a crime or offense for which he was not arrested.
- He had never been arrested, cited, or detained by any law enforcement officer (including INS and military officers) for any reason.
- He had never been charged with committing any crime or offense.
- He had never been convicted of a crime or offense.
- He had never received a suspended sentence, been placed on probation, or been paroled.
- He had never been in jail or prison.
- He had never given any false or misleading information to any U.S. government official while applying for any immigration benefit to prevent deportation, exclusion, or removal.
- He had never lied to any U.S. government official to gain entry or admission into the United States.
- Neither removal, exclusion, rescission, nor deportation proceedings were pending against him.
- He had never been removed, excluded, or deported from the United States.
- He had never been ordered to be removed, excluded, or deported from the United States.
- He had never applied for any kind of relief from removal, exclusion, or deportation.

- He had taken one trip of 24 hours of more outside of the United States during the last five years to Bangladesh.

21. On July 18, 2005, Mozammel appeared for an interview at the USCIS Field Office in Philadelphia, Pennsylvania, to determine his eligibility for naturalization.

22. During the course of the naturalization interview, the interviewing officer, Immigration Services Officer (ISO) J.R. Fanchalsky made a total of one correction/addition to Mozammel's Form N-400, in which he amended the end date of Mozammel's most recent employment to "present." At the conclusion of his naturalization interview, Mozammel swore that the contents of his Form N-400, including the one correction/addition, were true and correct.

23. On the basis of Mozammel's written application and the testimony that he provided during his naturalization interview, USCIS approved Mozammel's Form N-400 on July 18, 2005.

24. On September 1, 2005, Mozammel, under the name Mohammed Ali Mozammel, took the Oath of Allegiance and was admitted as a citizen of the United States. USCIS issued his Certificate of Naturalization No. 29391489.

## ILLEGAL PROCUREMENT OF NATURALIZATION

### Illegal Procurement of Naturalization
### Not Lawfully Admitted for Permanent Residence
### Final Order of Deportation Outstanding at Adjustment

25. To be eligible for naturalization, an applicant must have been lawfully admitted for permanent residence in accordance with all applicable provisions of the INA. INA § 318, 8 U.S.C. § 1429.

26. Under the law in effect at the time of Mozammel's adjustment of status to permanent resident, as today, the immigration court generally had exclusive jurisdiction over applications for adjustment of status filed by applicants (other than certain arriving aliens) in deportation or removal proceedings, including applicants with a final order of deportation or removal. 8 C.F.R. § 245.2(a)(1) (2001).

27. Mozammel was subject to an order of deportation under the name of Mohammad Ali as of April 6, 1998, and filed his application for adjustment of status on March 15, 2001. Because Mozammel misrepresented certain facts in connection with his application, INS was not aware of the outstanding order of deportation, and approved his application for adjustment of status on August 31, 2001.

28. Because the immigration court had exclusive jurisdiction over Mozammel's application for adjustment of status at the time it was approved by INS, he was not lawfully admitted for permanent residence; accordingly, he illegally procured his naturalization.

**Illegal Procurement of Naturalization**
**Not Lawfully Admitted for Permanent Residence**
**Not Eligible to Receive an Immigrant Visa**

29. To be eligible for naturalization, an applicant must have been lawfully admitted for permanent residence in accordance with all applicable provisions of the INA. INA § 318, 8 U.S.C. § 1429.

30. Among the INA provisions applicable at the time of Mozammel's adjustment of status to permanent resident was the requirement that he be eligible to receive an immigrant visa and that an immigrant visa be immediately available to him at the time the application to adjust status was filed. INA § 245(a), 8 U.S.C. § 1255(a).

31. An alien who seeks an immigrant visa on the basis of a marriage entered into during deportation proceedings is ineligible for adjustment of status, unless the alien establishes by clear and convincing evidence that the marriage meets certain good faith requirements. INA § 245(e), 8 U.S.C. § 1255(e). With regard to the underlying visa petition, the petition itself may not be approved until the alien has resided outside the United States for two years after the date of marriage, INA § 204(g), 8 U.S.C. § 1154(g), unless the alien meets the good faith exception in INA § 245(e), 8 U.S.C. § 1255(e). INA § 204(g), 8 U.S.C. § 1154(g); INA § 245(e), 8 U.S.C. § 1255(e).

32. Mozammel was in deportation proceedings under the name Mohammad Ali at the time he married his U.S. citizen spouse, Deborah A. Mattei-Mozammel. Because Deborah A. Mattei-Mozammel represented on the Form I-130 that Mozammel had never been under immigration proceedings, INS was unaware the I-130 visa petition was subject to the restrictions under section 204(g) of the INA and approved it without the petition meeting the good faith requirements under section 245(e)(3) of the INA. INA § 204(g), 8 U.S.C. § 1154(g); INA § 245(e)(3), 8 U.S.C. § 1255(e)(3).

33. Because Mozammel was not eligible for approval of the I-130 visa petition, he was not eligible to receive an immigrant visa at the time the application to adjust status was approved by INS. Therefore, he was not lawfully admitted for permanent residence; accordingly, he illegally procured his naturalization.

**Illegal Procurement of Naturalization**
**Not Lawfully Admitted for Permanent Residence**
**Inadmissible Based on Fraud or Misrepresentation**

34. To be eligible for naturalization, an applicant must have been lawfully admitted for permanent residence in accordance with all applicable provisions of the INA. INA § 318, 8 U.S.C. § 1429.

35. Among the INA provisions applicable at the time of Mozammel's adjustment of status to permanent resident was the requirement that he be admissible to the United States. INA § 245(a)(2), 8 U.S.C. § 1255(a)(2).

36. Under the law then in effect at the time of Mozammel's adjustment of status to permanent resident, as today, an individual who by fraud or willfully misrepresenting a material fact was seeking to procure (or had sought to procure or had procured) a visa, other documentation, admission into the United States, or other benefit provided under the INA was inadmissible. INA § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i).

37. Based on the information contained above, Mozammel willfully misrepresented material facts, specifically, his identity and immigration history.

38. Because Mozammel misrepresented material facts, he was inadmissible to the United States at the time of his adjustment of status and was not lawfully admitted for permanent residence; accordingly, he illegally procured his naturalization.

### Illegal Procurement of Naturalization
### Lack of Good Moral Character
### Unlawful Acts

39. As an applicant for naturalization under section 319(a) of the INA, Mozammel was required to establish that he was a person of good moral character during the period beginning three years prior to the filing of his application for naturalization and continuing until the time of admission to citizenship. This period is generally referred to as the "statutory period."

40. Mozammel filed his application for naturalization on November 1, 2004; accordingly, he was required to establish that he was a person of good moral character from November 1, 2001, until the time of his admission to citizenship on September 1, 2005.

41. Under the law then in effect, as today, an individual could not establish good moral character if, during the statutory period, he committed unlawful acts that adversely reflected on his moral character, unless he could establish extenuating circumstances. INA § 101(f); 8 U.S.C. § 1101(f); 8 C.F.R. § 316.10(b)(3)(iii).

42. Based on the facts contained above, during the statutory period Mozammel committed unlawful acts that adversely reflected on his moral character. Specifically, Mozammel violated 18 U.S.C. § 1001(a)(1)-(3) by knowingly and willfully concealing in his naturalization application—a matter within the jurisdiction of the executive branch of the Government of the United States—that he had previously used a different identity, that he been ordered deported under that identity, and that he had given false information to a U.S. government official when applying for an immigration benefit, among other material facts. Mozammel could not establish extenuating circumstances; accordingly, he was not eligible for naturalization and illegally procured his naturalization.

## PROCUREMENT OF NATURALIZATION BY WILLFUL MISREPRESENTATION OR CONCEALMENT OF MATERIAL FACTS

43. A naturalized citizen is subject to revocation of naturalization if he procured naturalization by willfully misrepresenting or concealing material facts.

44. Based on the facts contained above, Mozammel willfully misrepresented his identity and immigration history throughout the naturalization process.

45. The misrepresentations made by Mozammel during the naturalization process were material to determining his eligibility for naturalization because they would have had the natural tendency to influence the decision whether to approve his naturalization application. In fact, Mozammel misrepresented and concealed facts that would have shown that he was not lawfully admitted for permanent residence in accordance with all applicable provisions of the INA, and thus was ineligible for naturalization under INA § 318, 8 U.S.C. § 1429.

46. Mozammel was able to procure his naturalization because he concealed or misrepresented material facts regarding his identity and immigration history.

DECLARATION IN LIEU OF JURAT
(28 U.S.C. § 1746)

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _05/20/2026_____ at _U.S. Citizenship and Immigration Services_Headquarters

NASIM SARGORDAN
Digitally signed by NASIM SARGORDAN
Date: 2026.05.20 10:39:34 -04'00'

Nasim Sargordan
Adjudication Officer
United States Citizenship and Immigration Services
Department of Homeland Security